IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| AIKEN COUNTY, | ) | Civil Action No.: 1:05-cv-2737-RBH |
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| SAMUEL W. BODMAN, Secretary of the Department of Energy in his official capacity, UNITED STATES DEPARTMENT OF ENERGY, | ) | |
| Defendants. | ) | |

Pending before the court is Defendants' [Docket Entry #19] motion to dismiss. Defendants' motion was extensively briefed by the parties. On May 24, 2007, a hearing was held on the matter before the undersigned.

**Factual Background and Procedural History**

In September 2000, the United States signed the Plutonium Management and Disposition Agreement with the Russian Federation in which the United States and the Russian Federation agreed to dispose of 34 metric tons each of excess weapons grade or defense plutonium. Both countries intended to achieve this goal through either immobilization and/or conversion of the defense plutonium to a mixed oxide (MOX) fuel for use in commercial nuclear reactors. In the United States, the conversion of defense plutonium and defense plutonium materials into MOX will take place at the Savannah River Site ("SRS") in Aiken

County, South Carolina upon completion of a MOX fabrication facility.[1]

The Bob Stump National Defense Authorization Act for Fiscal Year 2003, PL No. 107-314 ("2003 Appropriations Act"), which was amended by the Energy and Water Development Appropriations Act, 2006, PL No. 109-103 ("2006 Appropriations Act"), and is now codified at 50 U.S.C. § 2566, governs the construction and operation of the MOX facility at the SRS and outlines the methods through which the United States can meet its obligations under the Plutonium Management and Disposition Agreement. Section 2566 requires a plan for construction and operation of the MOX facility as well as a plan for corrective actions if construction or operation of the MOX facility is behind schedule. The provisions of 50 U.S.C. § 2566 also set forth certain reporting requirements and/or certifications and limitations on shipments of weapons grade plutonium to the SRS. Additionally, the statute provides for "economic and impact assistance" to the State of South Carolina beginning in 2014 if the MOX facility does not stay on schedule. The statute implies that the State of South Carolina may sue the Department of Energy, which counsel for the DOE conceded at the hearing on this matter;[2] however, any injunction obtained by the State of South Carolina would toll deadlines that would trigger payment of the economic and impact assistance.

Aiken County brought this action against the United States Department of Energy and Samuel Bodman in his official capacity as Secretary of the Department of Energy (collectively referred to as "DOE") alleging the DOE violated provisions of 50 U.S.C. § 2566.

---

[1] In the Department of Energy's December 2006 report to Congress on the Construction and Operation of the MOX fabrication facility, the Department stated that design of the MOX facility was approximately 85% complete and the site had been prepared for the construction phase. [Docket Entry #35-3].

[2] Transcript of Motion to Dismiss Hearing, at 53 [Docket Entry #37].

This case arises from the fact that the DOE, through various reports to Congress, has indicated the construction of the MOX facility was years behind schedule and the MOX production objective would not be met by the statutory deadline of 2012.[3] Aiken County contends that because the Secretary has determined the MOX production objective will not be met by the new statutory deadline of 2012, § 2566(b)(4) requires the Secretary to issue an order or directive suspending shipments of plutonium to the SRS until the Secretary certifies that the MOX production objective can be met by the new 2012 statutory deadline. Counsel for the parties stated at the hearing that currently no defense plutonium or defense plutonium materials are being shipped to the SRS and there are no immediate plans to ship defense plutonium and defense plutonium materials to the SRS.

Aiken County's amended complaint seeks the following relief:

1) A declaration that:

a) having determined in 2005 that it was "impossible" to achieve the MOX production objective by the statutory deadlines under the original 2003 Act, the Secretary violated original Section 3182 by failing to submit a corrective action plan to Congress by August 15, 2005. The DOE Secretary further violated section 3182 of the original 2003 Act by failing to specify the corrective measures DOE would take to put the MOX program back on schedule and by failing to establish benchmarks to ensure that the MOX production objective would be met;

[3] The term "MOX production objective" means production at the MOX facility of MOX from defense plutonium and defense plutonium materials at an average rate of not less than one metric ton of MOX per year. 50 U.S.C. § 2566(h)(1).

      b) the Secretary's 2006 certification to Congress that the new statutory deadlines cannot be met, coupled with the Secretary's statement that the MOX production objective cannot be achieved by 2015, triggered the agency's statutory obligation to first certify to Congress that the statutory deadlines can be met before shipments of defense plutonium and defense plutonium materials to the SRS may continue;

      c) Congress, in its amendments to the 2003 Act, did not relieve the Secretary or the DOE of the obligation to first certify to Congress that the statutory deadlines for the MOX production objective can be met before shipments of defense plutonium and defense plutonium materials to the SRS can continue; and

      d) having made no certification to Congress that the MOX production objective can be met by the new statutory deadlines, the Secretary and the DOE lack the authority to continue shipments of defense plutonium and defense plutonium materials to the SRS until such time as the Secretary certifies to Congress that the MOX production objective can be met by the new statutory deadlines.

2) Mandamus order and injunction compelling the DOE Secretary to comply with his statutory obligations to issue an order or official directive immediately suspending all shipments of defense plutonium and defense plutonium materials to the SRS until the DOE secretary certifies that the MOX production objective can be met under the new statutory deadlines; and

3) That this court retain jurisdiction over this case until the DOE Secretary certifies to

Congress that the MOX production objectives can be met under the new statutory deadlines.

DOE moved to dismiss the amended complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted because: (1) Aiken County does not have standing, as *parens patriae*, to bring this lawsuit; (2) the statute Aiken County seeks to enforce does not create a private cause of action for non-monetary damages that Aiken County can enforce; (3) there is no "final agency action" to review under the Administrative Procedures Act; (4) this lawsuit is not ripe for adjudication; and (5) the mandamus statute does not apply.

**Discussion**

Aiken County argues that it is not asserting a private cause of action under 50 U.S.C. § 2566. Rather, Aiken County, as a neighboring landowner to the SRS, is seeking review of the DOE's refusal to issue an official order or directive suspending shipments of defense plutonium and defense plutonium materials to the SRS under the Administrative Procedures Act, 5 U.S.C. § 501, *et seq*. ("APA"). Aiken County's claim must fail, however, because there has been no "final agency action" for this court to review under the APA. Additionally, Aiken County's amended complaint is due to be dismissed because the current matter is not ripe for review. The concept of ripeness and the need for "final agency action" as a prerequisite for judicial review of an agency action under the APA are closely related. However, the court will address each issue separately.

Standing to Sue Under The Administrative Procedures Act

The Administrative Procedure Act ("APA") provides that "[a] person suffering legal

wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C.A. § 702.

In *Lujan v. Defenders of Wildlife*, the Supreme Court set forth the minimum standing requirements under Article III of the Constitution. 504 U.S. 555 (1992). For a plaintiff to establish Article III standing, the plaintiff must show: 1) an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; 2) a causal connection between the injury and the complained of conduct; and 3) the injury is redressable by a favorable decision. *Defenders of Wildlife*, 504 U.S. at 560-61. A prerequisite for the exercise of a right to review under the APA is that the plaintiff must satisfy the minimum standing requirements of Article III. *Motor Coach Industries, Inc. v. Dole*, 725 F.2d 958, 963 (4th Cir. 1984). "The APA has broadened the 'categories of injury that may be alleged in support of article III standing,' but it has not displaced the analytical framework under which the constitutional determination is made." *Motor Coach*, 725 F.2d at 963. "Neither the Administrative Procedures Act, nor any other congressional enactment, can lower the threshold requirements of standing under Art. III." *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 487 n.24 (1982).

The Fourth Circuit has recognized that in the APA context, which is the provision with which we are concerned in this case, the Supreme Court considers the Article III standing requirements satisfied when three elements are present: 1) the actual injury must be within the zone of interests protected by the statute; 2) the injury must be fairly traceable to the specific agency action challenged; and 3) the alleged injury must be redressable by a favorable decision. *Motor Coach*, 725 F.2d at 963 (citing *Simon v. Eastern Kentucky Welfare Rights*

*Org.*, 426 U.S. 26, 38-39 (1976)).

Similar to the plaintiffs in *Lujan v. National Wildlife Federation*, 497 U.S. 871, 882 (1990), Aiken County argues that it is not asserting a private cause of action under 50 U.S.C. § 2566; Aiken County merely seeks review of DOE actions or inactions under the APA. "When, as here, review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'" *National Wildlife Federation*, 497 U.S. at 882; 5 U.S.C. § 704.  Thus, in order for a plaintiff to have standing to challenge an agency action under the APA, the plaintiff must: 1) identify some "final agency action" that causes an injury that can be redressed by the courts and 2) establish that the injury he complains of arguably falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for his complaint. *National Wildlife Federation*, 497 U.S. at 882-83; *Motor Coach*, 725 F.2d at 963; *Robishaw Engineering, Inc. v. United States*, 891 F. Supp. 1134, 1147 (E.D. Va. 1995).

Aiken County contends that the "final agency action" it is seeking to have reviewed is the DOE's failure or refusal to issue an order or official directive suspending all shipments of defense plutonium and defense plutonium materials to the SRS until the DOE Secretary certifies that the MOX production objective can be met by the 2012 statutory deadline. Section 551(13) of the APA defines "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).  Indeed, in certain circumstances, an agency's failure or refusal to act can constitute a "final agency action" subject to judicial review. *See San Juan Citizens' Alliance v. Babbitt*, 228

F. Supp. 2d 1224 (D. Colo. 2002) (district court exercised jurisdiction to review agency's failure to comply with the National Environmental Policy Act (NEPA)); *Natural Resources Defense Council, Inc. v. Fox*, 93 F. Supp. 2d 531 (S.D.N.Y. 2000) (district court exercised jurisdiction to review Environmental Protection Agency's (EPA) refusal to declare that state's failure to submit total maximum daily loads (pollution limits) concerning state water bodies constituted constructive submission of inadequate total maximum daily loads); *Florida Keys Citizens Coalition, Inc. v. West*, 996 F. Supp. 1254, 1257 (S.D. Fla. 1998) (district court exercised jurisdiction under APA to review Army Corps of Engineers alleged failures to maintain records of wetland acreage loss and consult with other agencies before granting permits to discharge materials into U.S. waters).

In ascertaining whether agency action is final and therefore subject to review, courts should take a functional, pragmatic approach. *Robishaw Engineering*, 891 F. Supp. at 1151. An agency action is "final" and reviewable under the APA when the agency completes its decision making process and the result of that process is one that will directly affect the parties. *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992). In *National Wildlife Federation*, the Supreme Court stated that "[e]xcept where Congress explicitly provides for our correction of the administrative process at a higher level of generality, we intervene in the administration of laws only when, and to the extent that, a specific 'final agency action' has an <u>actual or immediately threatened effect</u>." *National Wildlife Federation*, 497 U.S. at 894 (emphasis added) (citing *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 164-66 (1967)). Factors to consider when determining whether an "agency action" is a "final agency action" include: 1) whether the action is a definitive statement of the agency's position; 2) whether the action has the

status of law and requires immediate compliance; 3) whether the action has a direct and immediate impact on the plaintiff's day-to-day business; 4) whether the request for declaratory relief is designed to speed enforcement and prevent piecemeal litigation; and 5) whether the questions presented are primarily legal rather than factual. *Robishaw Engineering*, 891 F. Supp. at 1151 (citing *FTC v. Standard Oil Co.*, 449 U.S. 232, 239-240 (1980); *Natural Resources Defense Council, Inc. v. EPA*, 16 F.3d 1395, 1407 (4th Cir. 1993)).

In this case, there is no "final agency action" for the court to review. First, the failure or refusal of the DOE to issue an order or official directive suspending shipments of defense plutonium to the SRS does not create an actual or immediately threatened effect on Aiken County. As noted throughout this Order, there are no shipments of defense plutonium in transit or scheduled to arrive at the SRS in the immediate future. Second, the DOE has not indicated one way or the other whether it intends to ship defense plutonium to SRS in the future. The actions of the DOE simply do not constitute the completion of its decision making process. As there are no shipments of defense plutonium planned or in transit, the DOE's actions or failure to act do not have a direct and immediate impact on Aiken County's day-to-day business. Finally, Aiken County has not demonstrated that the DOE's failure or refusal to order the suspension of future plutonium shipments amounts to a definitive statement of the agency's position. As a result, there is no "final agency action" for this court to review.

Aiken County may have made a showing that they, as neighboring landowners to the SRS, are "arguably" within the "zone of interests" that the suspension provisions contained in 50 U.S.C. § 2566(b)(4) are designed to protect. The intent behind the provisions of 50 U.S.C. § 2566 appear to be two-fold. First, in connection with its ties to foreign policy and non-

proliferation agreements, 50 U.S.C. § 2566 was intended to implement the construction and operation of a MOX facility at the SRS. Second, § 2566 was intended to prevent the possibility of a buildup of defense plutonium and defense plutonium materials at the SRS. It would appear at first glance that individuals and landowners within the immediate vicinity of the SRS are intended to be protected by the suspension provisions that prevent the buildup of defense plutonium at the SRS. Section 2566 also contains, as a last resort, provisions for the removal of any such defense plutonium. A review of the Congressional Record indicates that, in addition to the DOE and the State of South Carolina, the safety and health of South Carolina citizens was taken into account when the MOX facility and previous incarnations of 50 U.S.C. § 2566 were discussed in Congress. 148 Cong. Rec. S3844-01 (daily ed. May 2, 2002) (statement of Sen. Thurmond). As stated by the late Senator Thurmond, "[n]either I nor anyone else who represents South Carolina at the Federal or State level is willing to see the Savannah River Site become the de facto dumping ground for the nation's nuclear materials." 147 Cong. Rec. S7895-05 (daily ed. July 19, 2001) (statement of Sen. Thurmond).

However, it is unnecessary to decide whether Aiken County arguably falls within the "zone of interests" 50 U.S.C. § 2566 is designed to protect as the court has determined that there has been no final agency action. For that reason, Aiken County does not have standing to sue the DOE under the APA for the DOE's refusal to issue an order or official directive suspending shipments of defense plutonium to the SRS.

Ripeness

Ripeness is a justiciability doctrine for determining when judicial review of a matter is appropriate. Erwin Chemerinsky, Constitutional Law, Principles and Policies § 2.6.1 (2d ed.

2002). The ripeness doctrine is "designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)).

Whether administrative action is ripe for judicial review requires an evaluation of the fitness of the issues for judicial decision and the hardship to the parties if the court withholds consideration. *Nat'l Park Hospitality*, 538 U.S. at 808. The Supreme Court has held that a court must consider: 1) whether delayed review would cause hardship to the plaintiffs; 2) whether judicial intervention would inappropriately interfere with further administrative action; and 3) whether the court would benefit from further factual development of the issues. *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998). With regard to the hardship inquiry, the plaintiff must show "adverse effects of a strictly legal kind." *Nat'l Park Hospitality*, 538 U.S. at 809. The "adverse effects" must be of the sort that traditionally would qualify as harm. *Ohio Forestry*, 523 U.S. at 733.

The ultimate relief Aiken County is seeking in this lawsuit is an Order that shipments of defense plutonium be suspended until the DOE certifies that it can meet the MOX production objective by the 2012 statutory deadline. At the hearing, Aiken County stated that the issue we are here on is "whether the shipments of defense plutonium should at this point

stopped."[4] However, in this case, it is undisputed that currently there are no shipments of defense plutonium or defense plutonium materials in transit or scheduled for delivery to the SRS. Also, pursuant to the provisions of 50 U.S.C. § 2567, "[f]or each shipment of defense plutonium or defense plutonium materials to the Savannah River Site, the Secretary shall, not less than 30 days before the commencement of such shipment, submit to the congressional defense committees a report providing notice of such shipment." 50 U.S.C. § 2567(b). Furthermore, although formal notification to the Governor of South Carolina is not required by statute, at the hearing counsel for the DOE stated that based on his experience from prior litigation "there is informal consultation with the Governor's office."[5] Under these circumstances, Aiken County cannot demonstrate that it will suffer hardship if review of this matter is delayed. *See Ohio Forestry*, 523 U.S. at 733.

This case also presents a circumstance where further factual development of the issues is needed for adjudication. The construction of the MOX facility is directly tied to available funds appropriated from Congress. As stated by the DOE at the hearing and supported by a review of the Congressional Record, funding for the MOX facility could be increased, decreased, or completely "zeroed out."[6] The future of the MOX facility itself is not certain, nor is it clear whether future shipments of defense plutonium to the SRS will ever occur. As such, this case is not ripe for the court to review. Perhaps the ripeness problem will be alleviated when the DOE Secretary notifies Congress of the DOE's intent to reinstate

---

[4] Transcript of Motion to Dismiss Hearing, at 15 [Docket Entry #37].

[5] *Id*. at 5.

[6] *Id*. at 9.

shipments of defense plutonium or defense plutonium materials to the SRS. Until that time, any Order or Opinion issued by this court on the merits of Aiken County's allegations would constitute an advisory opinion, which this court is not willing to do. *See Flast v. Cohen*, 392 U.S. 83, 86 (1968) (stating "[w]hen the federal judicial power is invoked to pass upon the validity of actions by the Legislative and Executive Branches of the Government, the rule against advisory opinions implements the separation of powers prescribed by the Constitution and confines federal courts to the role assigned them by Article III").

## Conclusion

Because there has been no "final agency action" for this court to review and this matter is not ripe adjudication, Aiken County's amended complaint is due to be dismissed. DOE's [Docket Entry #19] motion to dismiss is **GRANTED**. This case is hereby **DISMISSED without prejudice**.

**IT IS SO ORDERED**.

s/R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, SC
June 22, 2007